UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIE M. M.,[1]<br><br>              Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>             Defendant. | Case No.  ED CV 19-02347-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Rosalie M. ("Plaintiff") challenges the denial by the Commissioner of Social Security ("Defendant") of her application for supplemental security income ("SSI"). She contends that the Administrative Law Judge ("ALJ") erred when he found that she could perform work existing in the national economy. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. SUMMARY OF PROCEEDINGS

On January 5, 2016, Plaintiff filed a Title XVI application for SSI, alleging that she had been disabled since January 24, 2014, due to "depression, bipolar,

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[restless leg syndrome], carpal tunnel, and asthma." (Administrative Record ("AR") 399-406, 428.) Her application was denied initially and upon reconsideration and she requested and was granted a hearing before an ALJ. (AR 328-31, 339-43.) Following a hearing on November 6, 2018, at which Plaintiff appeared with counsel, the ALJ found that Plaintiff had not been disabled at any time from her alleged onset date through the date of decision. (AR 127-42, 242-75.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) This action followed.

## III. DISCUSSION

Plaintiff contends that the ALJ erred at step five of the sequential disability evaluation when he relied upon the testimony of a vocational expert ("VE") to conclude that Plaintiff would be able to work as a small products assembler II, a bench assembler, and a routing clerk. (JS 5-16, 24-27; AR 142.) She contends that the VE's testimony could not constitute substantial evidence to support the ALJ's decision because that testimony conflicted with information about the three jobs that is contained in the Occupational Requirements Survey ("ORS"), the Selected Characteristics of Occupations ("SCO"), and O*NET OnLine, as well as in the Dictionary of Occupational Titles ("DOT"). According to Plaintiff, the VE failed to explain why her testimony was inconsistent with those sources.[2] For the reasons below, the Court affirms.

At step five of the sequential disability analysis, it is the Commissioner's burden to establish that, considering the claimant's residual functional capacity, the claimant can perform other work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed

---

[2] Plaintiff presented the job information from the ORS, SCO, and O*Net OnLine for the first time in her April 2019 letter brief to the Appeals Council. (AR 512-14.)

hypothetical questions to the VE to establish: (1) what jobs, if any, the claimant can do; and (2) the availability of those jobs in the national economy. *Garrison*, 759 F.3d at 1011. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (quoting *Tackett*, 180 F.3d at 1101). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

The ALJ found, among other limitations not relevant here, that Plaintiff had the residual functional capacity to perform light work, but would be limited to: standing or walking for four hours in an eight-hour workday; only simple and routine tasks; no work at "production rate pace, as with an assembly line"; no more than frequent contact with coworkers and supervisors; and no more than occasional contact with the public.³ (AR 133.) The VE testified that an individual of Plaintiff's age, education, and work experience and with the residual functional capacity found by the ALJ could work as a small products assembler II, a bench assembler, and a routing clerk. (AR 272.) The expert further testified that, based on her training, experience, and observation of jobs, the number of positions available nationally would be "eroded" by 75% in each job owing to the standing/walking limitation of four hours in an eight-hour workday. (AR 272, 274.) Taking this "erosion" into account, the expert testified that there would be 20,000 positions available nationally for a small products assembler II; 9,000 for a bench assembler; and 12,500 for a routing clerk. (AR 272.) Plaintiff's counsel did not question the VE regarding her

\\\

---

³ Plaintiff has not challenged the ALJ's residual functional capacity determination.

sources or methods.[4] (AR 274.) In his decision, the ALJ adopted the VE's testimony in concluding that Plaintiff was not disabled. (AR 242.)

Plaintiff takes issue with the VE's testimony regarding the job requirements and numbers for each of the three jobs she identified. First, she points out that the ORS 2017 Dataset indicates that the average small products assembler II or bench assembler spends over seven hours standing or walking each workday and sits for less than one hour each workday. (JS 8.) Plaintiff contends accordingly that there would be few to no positions available for an individual who is limited to no more than four hours of standing or walking each eight-hour workday. She contends that the VE failed to provide any basis for her testimony that only 75% of positions would be eroded in each assembler job. (JS 10-11.) Because the ALJ was entitled to rely on the VE's testimony, this argument is rejected.

"[T]he Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy," and a VE's testimony generally should be consistent with it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Soc. Sec. Ruling 00-4p, 2000 WL 1898704 at *2). When there is a conflict between the DOT and a VE's testimony, neither automatically prevails over the other. *Id.* The ALJ must determine whether a conflict exists and, if so, determine whether the expert's explanation for the conflict is reasonable and whether there is a basis for relying on the expert rather than the DOT. *Id.*

Here there was no conflict between the DOT and the expert's testimony. Plaintiff argues that the testimony was undermined by data presented in a different source, the ORS. Yet the ALJ was not obligated to reconcile conflicts between the VE's testimony and the ORS. Although the regulations provide that the

---

[4] In response to a question from the ALJ, the vocational expert testified that she relied upon the "Dictionary of Occupational Titles and related publications," as well as Job Browser by SKILLTRAN and "the data from U.S. Publishing" in forming her opinion. (AR 269.)

Administration will take administrative notice of data in the DOT, the County Business Patterns, and the Occupational Outlook Handbook ("OOH"), among others, *see* 20 C.F.R. § 404.1566(d), "[i]t does not follow that an ALJ must in every case reconcile conflicts *sua sponte* between each of those data sources and the VE's testimony. That requirement was established in SSR 00-4p, a Social Security Ruling, only for the DOT and an associated document [the SCO]." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 n.6 (9th Cir. 2017). It follows *a fortiorari* that the ALJ need not reconcile conflicts between a VE's testimony and information contained in sources not even mentioned in the regulations. *See, e.g., Gonzalez v. Berryhill*, 2018 WL 456130, at *3 (C.D. Cal. Jan. 17, 2018) (finding no further inquiry or explanation needed by ALJ to rely on vocational expert's testimony, even where a conflict with the OOH exists). In fact, the ALJ was entitled to rely on the VE's testimony alone, without requiring more. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (explaining ALJ may take administrative notice of vocational expert's testimony regarding job numbers without any additional foundation). The fact that the VE explained where her numbers came from only strengthened that testimony and the ALJ's decision to accept it.[5]

---

[5] Plaintiff argues that under *Biestek v. Berryhill,* 139 S. Ct. 1140 (2019), a vocational expert "ought to explain the methodology for extrapolating the local experience to the national economy." (JS 10.) *Biestek* does not stand for that proposition. In fact, the Supreme Court held that a "vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155. Furthermore, although the Supreme Court observed that a "less qualified" expert who failed to produce supporting data "might offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar[,]" *id.* at 1155-56, Plaintiff has not challenged the qualifications of the vocational expert who testified at her hearing. Finally, the Supreme Court pointed out that a claimant "may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Id.* at 1156. Plaintiff failed to do so at her hearing. (AR 274.)

The same analysis applies to Plaintiff's argument that the VE erred in testifying that Plaintiff could work as a routing clerk because O*Net OnLine indicates that 79% of routing clerk positions require "constant contact with others," whereas Plaintiff is limited to no more than "frequent" contact with coworkers and supervisors and no more than "occasional" contact with the public. (JS 13-14.) Once again, the ALJ was not required to consider data contained in a source, O*Net OnLine, that is not mentioned in SSR 004-p. *See, e.g., Beamesderfer v. Berryhill*, 2018 WL 2315956, at *7 (C.D. Cal. May 18, 2018) (rejecting claim that ALJ was required to address inconsistency between vocational expert testimony and O*NET).

Plaintiff nevertheless contends that she could not perform the work of a routing clerk, contrary to the VE's testimony, because the DOT identifies a routing clerk as requiring a "significant worker function for data," which Plaintiff argues is inconsistent with the limitation imposed by the ALJ to "simple and routine tasks." (JS 14-16, citing DICOT 222.687-022, 1991 WL 672133.) The Court disagrees.

The vocational expert correctly testified that the job of a routing clerk requires a reasoning level of two. (AR 273; DICOT 222.687-022.) This requirement is not inconsistent with a limitation to only simple and routine work. *See, e.g., Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (noting "[u]npublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that a [residual functional capacity] limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning."). Plaintiff does not explain how the "worker function for data" overrides the reasoning level given in the DOT job entry. Because there was no apparent inconsistency between the DOT job description and the vocational expert's testimony, the ALJ was entitled to rely on that testimony.

Finally, Plaintiff challenges the vocational expert's testimony that she could work as a small products assembler II in light of her inability to perform work at "production rate pace, as with an assembly line." (JS 11-13.) Plaintiff's reasoning

is that a small products assembler II is classified as "light work," but the only one of the three definitions for light work given in the DOT that applies is the third: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." (JS 12, citing DICOT Appendix C.) Further, according to the SCO, a small products assembler II "engage[s] in constant reaching, constant handling and constant fingering to assemble parts." (JS 12.) This argument, which is based on a chain of assumptions, is rejected.

Simply put, the DOT entry for small products assembler II does not state that the job requires working at a production rate pace. (*See* DICOT 739.687-030, 1991 WL 680180.) By contrast, the DOT entry for small products assembler I describes the work as "[p]erforms any combination of following repetitive tasks on assembly line to mass produce small products[.]" (DICOT 706.684-022, 1991 WL 679050). Although the Court agrees that some small products assembler II positions may involve working at a production rate pace, the DOT does not make that an intrinsic element of the job. As such, there is no apparent inconsistency between the DOT and the vocational expert's testimony.

In sum, the Court finds that the ALJ properly relied on the VE's testimony and his step five findings are supported by substantial evidence.

## IV. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 11, 2020

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**